**Evie SIMPSON, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45101.**

Court of Criminal Appeals of Texas.

Oct. 18, 1972.

Rehearing Denied Dec. 6, 1972.

———◆———

William R. McGarvey, of McLemore, Dimon, McGarvey & Gross, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., and Harry J. Schulz, Jr., Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

This is an appeal from a conviction for unlawful possession of heroin. Trial was held before a jury, which assessed punishment at confinement for thirty years.

The evidence reflects that at approximately 6:00 p.m., on December 3, 1969, Dallas County Deputy Sheriff Valentine was told by an informer, who had given reliable information in the past that a person named "John Lee Smith" was at a certain location in Dallas and that he was preparing to leave. Valentine testified that he had a warrant for Smith's arrest, Smith having been previously indicted for a felony offense.

Upon receiving the information, Valentine and his partner called for and were joined by another squad, consisting of three officers. The five officers then proceeded to the location named by the informant. Three of the officers approached the front door of the location, which was

an apartment, and, knocking, stated that they were with the Sheriff's Department and that they were looking for John Lee Smith and that they had a warrant for his arrest.

The officers testified that at this time they could hear the sounds of people running inside the apartment and could also see people running, through a glass panel near the door. Valentine testified that one of the other officers stated that he recognized one of the persons in the apartment as being appellant and that he (Valentine) replied that he knew of the existence of a warrant for appellant's arrest. At this time, the officers kicked out one of the panels of the door and gained entry.

The officers then arrested one man (Carter) who attempted to leave through the front door. Another officer followed another man, Cleophus Beal, up a flight of stairs and into a bathroom. The officer observed Beal throw an object into the bathroom and, after entering the bathroom, found Beal and also observed a matchbox and three capsules, later identified as heroin, lying in the bathtub. The officer then arrested Beal. Officer Valentine followed the other officer upstairs and, after returning with Beal, went through the kitchen for the purpose of admitting the two remaining officers through the back door. In the kitchen he observed two hypodermic syringes in a glass on a table in the kitchen and another syringe lying on the drainboard of the sink. There was also a spoon, of the type used to melt heroin, lying on the drainboard. After admitting the two officers, Valentine returned to the kitchen, where he found appellant hiding under a raincoat in a pantry or utility room which was located immediately adjacent to the kitchen. No heroin was found on appellant's person nor within the immediate vicinity of the pantry.

In his brief, appellant asserts two grounds of error. In his first ground, he contends that the trial court erred in admitting the heroin, as it was the fruit of an unlawful search and seizure. In his second ground, he contends that the evidence was insufficient to support the conviction.

■ Appellant's first ground of error is without merit. Appellant does not challenge that a warrant for his arrest existed at the time he was arrested, nor does he challenge the existence nor the validity of the warrant for the arrest of John Lee Smith. The thrust of appellant's argument is that the informant's tip was insufficient under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964) to constitute probable cause to believe that John Lee Smith was at the location searched. In particular, appellant points out that there was no showing as to the manner by which the informant came to know that Smith was at the apartment. We need not discuss the sufficiency of the informant's tip under Aguilar and Spinelli because the validity of the officers' entry is not determined solely upon the validity of their belief that John Lee Smith was in the house. Upon seeing appellant through the window, before entry was made, their entry was justified by virtue of the warrant which existed for his arrest. Art. 15.25, Vernon's Ann.C.C.P. Therefore, the existence of probable cause to believe that John Lee' Smith was in the apartment is immaterial in determining the validity of the entry.

Appellant contends that even if his arrest was lawful, the seizure of the heroin which was found on the second floor of the house was not authorized as part of the search incident to his arrest (assuming that the officers could not have been legally upon the premises in search of John Lee Smith). He contends that the scope of the search incident to his arrest exceeded the limitation of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Chimel held that a search incident to arrest is limited to the person of the arrestee and the area into which he might reach. The

justification for a search within these limits is that it is necessary to protect the arresting officer.

■ In the instant case we feel that the seizure of the heroin was lawful under the rationale of *Chimel,* regardless of whether the entry was justified as a search for John Lee Smith. We do not construe the holding in *Chimel* as absolutely prohibiting searches beyond the area of the arrestee's reach; but rather, we feel that *Chimel* only prohibits *routine* searches of the area beyond the arrestee's reach.[1] It does not prohibit a search beyond that area if the circumstances of the arrest are such that an arresting officer would be justified in believing that an expanded search would be necessary for his protection. In the instant case, Cleophus Beal, unknown or unrecognized to the officers, fled up the stairs of the apartment at the time of the entry. Under these circumstances, we feel that the officers, although they had not yet found appellant, were justified in following Beal up the stairway. Since they were lawfully on the premises to arrest appellant, they were justified in following Beal as a protective measure. To hold otherwise would be to hold that when officers enter to arrest one person, they may not take measures to protect themselves from possible harm by other persons on the premises. If we were to hold that the officers were authorized only to pursue appellant and not Beal, we would be ignoring the arresting officers' inherent right of self-protection. When Beal fled, his actions could certainly have justified a feeling of apprehension on the part of the officers, a feeling which would have permitted his pursuit.[2]

■ That being the case, the officers were lawfully in the bathroom, and lawfully seized the heroin, which was recognized as such by one of the officers and was lying in plain view. Contraband which is in plain view may be lawfully seized without a warrant by an officer who is lawfully on the premises. *e.g.,* Elliott v. State, 450 S.W.2d 863 (Tex.Cr.App.1970); Jackson v. State, 449 S.W.2d 279 (Tex.Cr.App. 1970); Lewis v. State, 439 S.W.2d 351 (Tex.Cr.App.1969). Therefore, the seizure of the heroin was lawful. Appellant's first ground of error is overruled.

We shall now turn to appellant's second ground of error, in which he alleges that the evidence was insufficient to indicate possession.

The indictment alleges that "Cleophus Beal, Michael Leon Carter, and Evie Simpson, Jr., acting together, on or about the 3 day of December . . . did then and there unlawfully possess a narcotic drug, to wit, heroin . . . ." The court charge the jury on the law of principals, circumstantial evidence, and defined possession as "the actual care, control, custody, and management of the thing possessed." The charge also instructed the jury that if they found that Beal possessed heroin and that appellant was present at the time, in order to convict appellant, they must also find that he knew that the heroin was in Beal's possession, that he aided in its possession, and that he knew that heroin was in the house.

---

1. It was stated in *Chimel,* "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. * * * There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs . . . ." 395 U.S. 763, 89 S.Ct. 2040 (1969).

2. We recognize that the arresting officers testified that their entry was made in the belief that it was justified as a search for John Lee Smith, and that Beal was pursued in the belief that he might be Smith. The test for reviewing the actions of a law enforcement officer, however, is whether his actions were justified by law, not whether his belief was correct.

██ Possession of narcotics need not be exclusive. Evidence which shows that the accused jointly possessed the drug with another is sufficient. Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972); Valdez v. State, 481 S.W.2d 904 (Tex.Cr.App.1972); Shortnacy v. State, 474 S.W.2d 713 (Tex. Cr.App.1972); Buntion v. State, 476 S.W. 2d 317 (Tex.Cr.App.1972); Evans v. State, 456 S.W.2d 911 (Tex.Cr.App.1970); Ochoa v. State, 444 S.W.2d 763 (Tex.Cr.App. 1969). However, proof of mere presence at a place where narcotics are being used or possessed by others does not, in itself, justify a finding of joint possession. e.g. Valdez v. State, 481 S.W.2d 904 (Tex.Cr.App.1972); Hausman v. State, 480 S.W.2d 721 (Tex.Cr.App.1972); Reid v. State, 474 S.W.2d 702 (Tex.Cr.App. 1972); Kinkle v. State, 474 S.W.2d 704 (Tex.Cr.App.1972); Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App.1969).

██ The State must meet its burden of proving (1) that the accused exercised actual care, control and management over the contraband (either singularly or jointly), and (2) that he knew that the object which he possessed was contraband. Valdez v. State, supra; Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App.1972). As discussed earlier, this burden is not met by a mere showing that appellant was present. The State must provide evidence of an "affirmative link" between the accused and the narcotics. Valdez v. State, supra; Hausman v. State, supra; Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1971).

In the instant case, the State offered evidence which showed that: (1) the narcotics were found in the bathtub after Beal was seen to throw an object into the bathroom, thus supporting an inference that Beal had the heroin in his possession when he fled; (2) all persons in the house, including appellant, fled when the officers announced their presence, although they announced that they were looking for "John Lee Smith," who was not present;[3] (3) appellant had needle marks on his arm, some old and some fresh, including one which had blood flowing from it; (4) the two other men, including Beal, also had fresh needle marks on their arms; (5) all three men had slurred or "thick" speech, slow reaction time and "droopy" eyes, and their speech and reaction time deteriorated as time passed; (6) after appellant was found in the kitchen, he was returned to the front room of the apartment, where he looked toward his companions and stated: "We know who turned us in, and he was mad because we wouldn't give him a fix."

The question before the Court is whether this evidence was sufficient to provide an affirmative link between the heroin and the appellant. We hold that it was sufficient.

██ The needle marks on appellant's arm, and especially the fresh one, when considered with those on Beal's arm, who presumably threw the heorin into the bathtub, were of probative value in establishing joint possession of heroin. Valdez v. State, supra. Likewise, appellant's flight was of probative value in establishing his guilt. e.g., Weeks v. State, 476 S.W.2d 310 (Tex.Cr.App.1972). The narcotics paraphernalia, standing alone, would not link appellant with the heroin as there was no showing that he knew of it's presence before he fled into the kitchen. However, when viewed with the fresh needle mark on his arm, the paraphernalia was of probative value, as it indicated the means by which the mark was made. Likewise, appellant's spontaneous exclamation was evidence of guilt. On the other hand, the physical condition of appellant and the two other persons was not of value in establishing possession of heroin, as there was no evidence that the condition observed by the officers was of the type

---

3. Officer Valentine testified that he heard the sounds of people running after it was announced that the officers were from the Sheriff's Department, but before it was stated that they were looking for Smith.

normally caused by the use of heroin. Cf. Gilder v. State, 474 S.W.2d 723 (Tex. Cr.App.1972).[4]

Considering all of the State's evidence, except for the physical condition, we find that an affirmative link between appellant and the heroin has been shown. The evidence is sufficient to support the conviction. *Compare* Valdez v. State, supra, with Hausman v. State, supra.

The judgment is affirmed.

---

4. This writer dissented in *Gilder*. However, the need for evidence that a particular physical condition is the result of the use of a particular drug is even greater in narcotics cases, as knowledge of the effects of particular drugs is much less prevalent among the general populace than is knowledge of the effects of alcohol. As an example of the divergence of views as to the physical effects of the use of marihuana, see the discussion of the evidence in Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972).