Bobby Joe BRIDGER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 46910, 46988.

Court of Criminal Appeals of Texas.

Jan. 9, 1974.

Rehearing Denied Jan. 30, 1974.

James S. Moss (court appointed), Mesquite, for appellant.

Henry Wade, Dist. Atty., and James B. Scott, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The convictions in trials before separate juries are for felony theft and for robbery; the punishment for theft seven years' imprisonment and for robbery enhanced by a prior conviction, life imprisonment.

The same grounds of error are presented in both appeals and may be considered in one opinion. The appellant alleges that evidence was acquired in a unlawful search and seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 9 of the Texas Constitution, Vernon's Ann.St., and he urges that its admission in these trials was reversible error.

Dallas police officers, armed with a search warrant, searched the appellant's residence on November 7, 1971, and obtained two ski masks, a coil of blue wire, a money bag, $306.00 found in the bag (including three two-dollar bills), a number of rounds of .22, .32 and .38 caliber ammunition, and some silver coins which were introduced in evidence before the jury in the trial of the robbery case. Only the two ski masks and the coil of blue wire were admitted at the trial of the theft case. Appropriate objections in each of the trials raised the issues here presented.

One specific complaint is that the allegations of the affidavit made to support the issuance of the search warrant are insufficient to show probable cause for the issuance of the search warrant in view of the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The pertinent part of the affidavit reads as follows:

"I, T. C. Sewell, do solemnly swear that a certain place in Dallas County, Texas, described as 601 North Ewing, the Geneva Apartments, a two story white brick building, in apartment # 107 and being the premises under the control and in charge of Bobby Joe Bridger is a place where implements are kept for the purpose of aiding in the commission of an offense as defined by the Penal Code of the State of Texas, to-wit: Robbery with Firearms. This affidavit is based on information given in the form of a voluntary statement by Gary McCall, an accomplice of Bridger in the robbery of the First Federal Savings & Loan, 3924 S. Polk, on 11–3–71, McCall gave me $800.00 taken in the robbery and stated Bridger had the gun, a .38 cal revolver, and two ski masks that were used in the commission of the offense. The listed items are hidden in this apartment." [1]

As we read the affidavit the affiant did not assert that he had personal knowledge of any of the facts stated therein. The facts and circumstances stated in the affidavit are hearsay information. They are based solely upon the voluntary statement of an accomplice. The statement of the accomplice McCall was not attached and incorporated into the affidavit. If it had been it might have supplied the deficiencies which we find in the affidavit.

In Aguilar v. Texas, supra, it was said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697, the magistrate must be informed of some of the underlying cir-cumstances from which the informant concluded that the narcotics were where he claimed they were  . . ."

We do not intend to be overly strict or technical in our interpretation of affidavits supporting search warrants, recognizing that they must be written by working officers having limited time. We adhere to the "common sense" interpretation of such affidavits, but in doing so we must stay within the boundaries of constitutional requirements. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L. Ed.2d 684 (1965) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). Even if we liberally construe the affidavit to mean that McCall said the .38 caliber revolver and the two ski masks that were used in the commission of the robbery were hidden in the appellant's apartment, such a statement would not meet the above requirements of Aguilar. The magistrate issuing the warrant was not informed of the underlying circumstances from which the informant concluded that the named implements kept for the purpose of aiding in the commission of the robbery were where he claimed they were. The affidavit liberally construed shows no more than a suspicion on the part of the informer that these implements were kept where the appellant resided.[2] The affidavit does not relate that the informer had been on the described premises and seen the implements there or that the appellant had told him the implements were there, nor are any other underlying facts or circumstances provided to give credence to the informant's statement that the implements were on the premises described. See Lowery v. State, 499 S.W.2d 160 (Tex.Cr.App.1973); Nicol v. State, 470 S. W.2d 893 (Tex.Cr.App.1971); Ruiz v. State, 457 S.W.2d 894 (Tex.Cr.App.1970); Powers v. State, 456 S.W.2d 97 (Tex.Cr.

---

1. Even though the State's brief in the theft case states that the record does not contain a copy of the affidavit and the search warrant, we find these instruments are in the record before us.

2. The .38 caliber pistol introduced into evidence was actually found on other premises after the appellant's apartment had been searched.

App.1970) and compare Hegdal v. State, 488 S.W.2d 782 (Tex.Cr.App.1972); Adair v. State, 482 S.W.2d 247 (Tex.Cr.App. 1972); Frazier v. State, 480 S.W.2d 375 (Tex.Cr.App.1972); Polanco v. State, 475 S.W.2d 763 (Tex.Cr.App.1971); Stoddard v. State, 475 S.W.2d 744 (Tex.Cr.App. 1972).

We find that the search and seizure were unlawful because the affidavit supporting the search warrant is insufficient as it does not meet the first requirement of Aguilar v. Texas, supra. Therefore, we need not further consider the appellant's contentions that the second requirement of Aguilar concerning the reliability of the informer was not satisfied, and that the affidavit is insufficient because the description of the premises to be searched does not include the name of the city in Dallas County where the premises were located.

■ Since we are holding the search and seizure to be unlawful we must further inquire whether admission of the fruits of the search at his trials was harmful to appellant. If found to be harmless beyond a reasonable doubt, their admission would not require reversal. Cole v. State, 484 S.W.2d 779 (Tex.Cr.App.1972); Ex Parte Slaton, 484 S.W.2d 102 (Tex.Cr. App.1972); Milton v. Wainwright, 407 U. S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also Holcomb v. State, 484 S.W.2d 929 (Tex.Cr. App.1972); Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■■ To determine whether the admission of the unlawfully obtained evidence was harmless error beyond a reasonable doubt we must consider the other evidence in the record. The witnesses who were present when the robbery occurred at the First Federal Savings and Loan Association were unable to make a positive identification of the appellant because the two robbers both wore ski masks. The witnesses did observe that one of the robbers was short, stocky, and about forty years of age. This description fitted the appellant. The robbers took some old silver coins and approximately $2,900.00 in currency including four two-dollar bills. The employees of the savings and loan association saw the robbers escape in a late model Ford automobile which was maroon with a black vinyl top and bore license plates with letters and numbers LKL 247.

Although the record is not as precise as it might be in respect to distance and time, shortly after the robbery a repairman who was working on the roof of a two-story apartment building heard the "squeaking" of tires. When he looked in the direction of the noise he saw two men, one of whom he identified at the trial as the appellant, emerge from a late model Ford automobile which was maroon with a black vinyl top and bore license plates with letters and numbers LKL 247. The appellant was carrying a briefcase. After appearing to wipe something off from the automobile the two men got into another automobile and drove away at a rapid rate of speed. The repairman was so suspicious of the actions of the two men that he immediately informed police officers who came to make an investigation of the abandoned automobile. Fingerprints identified as those of the appellant and also those of Gary McCall were found on the automobile. The automobile had been "hot wired" with a piece of blue wire. The owner of the automobile and his wife testified that the automobile had been taken by someone without their permission and consent.

As a result of talking with Gary McCall, officers applied for a search warrant. After the warrant was issued they searched the appellant's apartment, and obtained the evidence which has already been described and which was introduced in the appellant's trials.

The appellant gave the officers a written confession which was introduced in evidence in both trials. It reads as follows:

"On November 2, 1971, Gary McCall came to my apartment and he was broke and needed money. I was also short of money and we talked about robbing a place. The next day Gary came over and we left in his car . . . We then went to the Golden Triangle Shopping Center and decided to rob the First Federal Savings and Loan. We went to Hampton and Illinois and stole a maroon Ford. We went to the bank and each of us put on a ski mask. These are the masks the officers found in my apartment. I had a .38 caliber chrome plated revolver and Gary had the brown satchel the officers recovered. I stood in the lobby and Gary went behind the counter and started putting money in the bag. He was slow so I went behind the counter and helped. We left the bank and dropped the stolen car and got in Gary's car and went to my apartment, where we divided the money. My share was $1700.00. The $306.00 found by the officers in my closet was part of this money."

The appellant offered no defense at his trials.

In Harrington v. California, supra, Mr. Justice Douglas authoring the majority opinion reiterated the admonishment of Chapman v. California, supra, against givng too much emphasis to overwhelming evidence of guilt when considering whether constitutional errors are harmless. An additional teaching of Harrington v. California, supra, is that an appellate court before affirming the conviction must be convinced by its own reading of the record that the impact of the tainted evidence upon the minds of average jurors would be harmless beyond a reasonable doubt. This determination is made in light of all of the admissible evidence.

In the cases before us the evidence of the appellant's guilt supporting the jury verdicts rests upon direct evidence and his confession. These convictions do not rest upon circumstantial evidence nor was the tainted evidence used to corroborate the testimony of an accomplice witness. The admission of the tainted evidence did not impinge upon a defense.

We are convinced beyond a reasonable doubt that the jury verdicts would have been the same even if the tainted evidence had not been admitted. See Milton v. Wainwright, supra. We find the admission of the tainted evidence in these cases based upon the facts in each record to be harmless beyond a reasonable doubt. See and compare: Milton v. Wainwright, supra; Harrington v. California, supra; Chapman v. California, supra; United States v. Tremarco, 475 F.2d 157 (3rd Cir. 1973); United States v. James, 153 U.S. App.D.C. 404, 473 F.2d 115 (D.C.Cir. 1973); Cannito v. Sigler, 449 F.2d 542 (8th Cir. 1971); United States v. Pardo, 436 F.2d 968 (5th Cir. 1971); Brown v. Beto, 425 F.2d 246 (5th Cir. 1970); Erving v. Sigler, 413 F.2d 593 (8th Cir. 1969).

■ In another ground of error related to Cause Number 46,988, the appellant asserts that "The trial court fundamentally erred in submitting to the jury a theory of enhancement that was not alleged in the indictment."

For the purpose of enhancing the penalty, the indictment alleged a prior conviction for felony theft. During the hearing at the punishment phase of the trial the State offered proof of the alleged prior conviction for theft. Under the provisions of Article 37.07, Vernon's Ann.C.C.P., the State also offered and the Court admitted proof of a prior burglary conviction. The jury was properly charged after the punishment phase concerning the enhancement portion of the indictment. But, inadvertently, the jury was furnished with a form for its finding which included a finding that the appellant was the same person who had been convicted at a prior time for the offense of burglary. When this find-

ing was returned this mistake was discovered and the Court refused to accept such finding. The jury was again retired and returned with a finding that the appellant was, prior to the commission of the offense then on trial, duly and legally convicted of a felony less than capital and of the same nature as the offense of robbery by assault, as charged by the indictment in this case.

The appellant argues that the form erroneously provided for the jury conveyed to the jury the impression that the appellant had been convicted of the offense of burglary and such error is fundamental in nature and so extremely prejudicial as to require a reversal.

Since the burglary conviction had been properly admitted in evidence before the jury, furnishing the jury with the incorrect form under the circumstances related was harmless. This ground of error is overruled.

The judgments are affirmed.

Opinion approved by the Court.