**Kevin Dale EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 50587.**

Court of Criminal Appeals of Texas.

Dec. 10, 1975.

Rehearing Denied Jan. 7, 1976.

James M. Beauchamp, Houston, for appellant.

Carol S. Vance, Dist. Atty., and James C. Brough, Alvin M. Titus and Ned Morris, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for possession of heroin; the jury assessed punishment at imprisonment for 9 years.

Appellant contends that the trial court erred in overruling his motion to suppress and in admitting into evidence the heroin that was seized. We agree and reverse the judgment.

The record reflects that on February 27, 1974, at about 11:00 p. m., several officers from the Houston Police Department and the Harris County Sheriff's Department arrived at a Houston motorcycle shop known as "Chopper's Fair." The officers had in their possession arrest warrants for one Marion Ray Lester, who was being sought in connection with an attempted murder of a police officer; the officers had information that Lester was at the above location. There were sliding metal doors in the front of the motorcycle shop, and those doors were chained and padlocked. The officers knocked, identified themselves and informed those inside the building that they had arrest warrants for Lester; the person who answered passed keys to the padlock through a gap between the doors. After gaining entry to the building, the officers fanned out and conducted a search for Lester, who was not found on the premises. Behind the metal doors was a workshop

where parts were stored and motorcycles were repaired. This work area was separated from attached living quarters by double glass doors which had been painted black. The living area consisted of a living room, a few small bedrooms and a hallway which led to the kitchen which was located in the back of the building. Officer White and Sergeant Thomas entered the kitchen area and found the appellant and two others seated at a table; in the center of the table was a clear plastic bag filled with purple tablets. Directly in front of the appellant on the table was a small tinfoil package; the appellant was toying with the tinfoil package with the blade of a pocket knife. After the three men were searched and taken to another part of the building, Officer White returned to the kitchen to retrieve the bag of tablets and the tinfoil package; in the package was a white powdery substance, later identified as heroin, which was admitted in evidence.

The questions presented may be summarized as follows: (1) was the arrest warrant for Marion Ray Lester valid under the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), (2) since the arrest warrant was the means by which the officers gained entry to the building, if the warrant was invalid, was the consent to enter voluntarily given, and (3) if the consent was not voluntarily given, were the officers lawfully in a position to see the subject heroin in plain view in appellant's possession?

■ The Supreme Court has held that the same standards set forth in *Aguilar* for hearsay affidavits supporting search warrants apply to those given in support of arrest warrants. *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970); *Barnes v. Texas*, 380 U.S. 253, 85 S.Ct. 942, 13 L.Ed.2d 818 (1965); *Barnes v. State*, 390 S.W.2d 266 (Tex.Cr.App.1965) (on remand). As applied to arrest warrants, *Aguilar v. Texas, supra,* would require that an affidavit based on

hearsay that is used to support an arrest warrant must set out for the magistrate who issues the arrest warrant (1) underlying circumstances upon which the informer concluded that the named party committed the criminal act charged, and (2) the circumstances from which the affiant concluded the informer was credible or his information reliable.

The magistrate was shown a complaint and an affidavit; these documents are in the record before us. The pertinent portion of the complaint reads:

"IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

"Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day personally appeared the undersigned affiant, who upon his oath says that he has good reason to believe and does believe that in the County of Harris and State of Texas one MARION RAY LESTER hereinafter referred to as Defendant, heretofore on or about February 26, 1974, did then and there unlawfully intentionally and knowingly attempt to cause the death of Rodney Scott Morgan, hereafter called complainant by cutting with a knife and the said Complainant was a peace officer acting in the lawful discharge of an official duty and the said defendant then and there knew the said Complainant was a peace officer."

The pertinent portion of the affidavit reads:

"WHEREAS complaint has been made by the undersigned affiant who upon his oath says that he has good reason to believe and does believe that in the County of Harris and State of Texas one MARION RAY LESTER hereinafter referred to as the Defendant, heretofore on or about February 26, 1974, did then and there unlawfully intentionally and knowingly attempt to cause the death of Rodney Scott Morgan, hereafter called Complainant, by cutting with a knife and the said Complainant was a peace officer act-

ing in the lawful discharge of an official duty and the said Defendant then and there knew the said Complainant was a peace officer.

"PROBABLE CAUSE:

"F. G. Dodd personally observed and identified above Defendant acting as a principal in the commission of above offense."

Both the complaint and the affidavit were signed by Officer John M. Donovan.

■ In determining the sufficiency of the affidavit we are bound by the four corners thereof. Art. I, Sec. 9, Texas Constitution; Art. 18.01, V.A.C.C.P.; *Ruiz v. State*, 457 S.W.2d 894 (Tex.Cr.App.1970); *Gaston v. State*, 440 S.W.2d 297 (Tex.Cr. App.1969) (concurring opinion), cert. denied sub nom. *Gaston v. Texas*, 396 U.S. 969, 90 S.Ct. 452, 24 L.Ed.2d 435 (1969); *Sessions v. State*, 498 S.W.2d 933 (Tex.Cr.App.1973); *Cook v. State*, 497 S.W.2d 295 (Tex.Cr.App. 1973); *Hegdal v. State*, 488 S.W.2d 782 (Tex.Cr.App.1972); *Wetherby v. State*, 482 S.W.2d 852 (Tex.Cr.App.1972); *Adair v. State*, 482 S.W.2d 247 (Tex.Cr.App.1972); *Polanco v. State*, 475 S.W.2d 763 (Tex.Cr. App.1972); *Nicol v. State*, 470 S.W.2d 893 (Tex.Cr.App.1971); *Hall v. State*, 394 S.W.2d 659 (Tex.Cr.App.1965).

■ The charging instrument, the complaint, containing no allegations that the officer-affiant spoke with personal knowledge of the matters contained therein and not indicating any sources for the officer-affiant's belief and not setting forth any other sufficient basis upon which a finding of probable cause could be made did not provide that necessary basis upon which a finding of probable cause could be made. *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970).

■ The affidavit contains no allegation of personal knowledge the alleged offense on the part of the affiant; therefore, the statements contained therein are hearsay and the affidavit must pass the two-prong *Aguilar* test. The affidavit does not state how the affiant acquired the information alleged in the affidavit; it does not state that Dodd was the informer; it does not state the name of an informer or allege that an unnamed informer gave the information to the affiant. The affidavit merely states that F. G. Dodd personally observed the named party Lester acting as a principal in the commission of the stated offense. This might satisfy the requirement that the informer state underlying facts from which he concluded the accused committed the offense charged, if the affiant also stated he had been told by F. G. Dodd that he (Dodd) had personally observed the commission of the offense. However, the affidavit does not state how the affiant came to know that Dodd had witnessed the offense; that is, the affidavit does not allege that Dodd communicated with the affiant at any time. Looking only to the affidavit, it is open to the interpretation that yet another unnamed person communicated to the affiant information to the effect that Dodd had been a witness to the commission of the offense.[1] If that were the case, the affidavit would contain so-called "double hearsay." Of course, the mere fact that an affidavit contains "double hearsay" does not automatically make it insufficient to

1. *Aguilar v. Texas, supra*, footnote 4 reads: "To approve this affidavit would open the door to easy circumvention of the rule announced in *Nathanson* [*Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159] and *Giordenello*. A police officer who arrived at the 'suspicion,' 'believe' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession."

supply probable cause.[2] The inclusion of hearsay upon hearsay may be simply treated as one of the factors the magistrate weighs in determining whether the information contained in the affidavit is reliable. On the other hand, it has also been held that:

". . . hearsay based on hearsay should be acceptable as long as the police officer has sufficient information so that both levels of hearsay meet the two-pronged test spelled out in *Aguilar*." *United States v. Wilson*, 479 F.2d 936 (7th Cir. en banc 1973).

Also see, *United States v. Carmichael*, 489 F.2d 983 (7th Cir. en banc 1973); *United States v. Finn*, 502 F.2d 938 (7th Cir. 1974); *Aguilar v. State, supra*, footnote 4. Under the latter line of cases, and interpreting the affidavit such that another, unnamed person communicated to the affiant information to the effect that Dodd had been a witness to the commission of the offense, the affidavit before us contains neither un-

derlying circumstances upon which the informer concluded that the named party was involved in criminal activities nor circumstances from which the affiant concluded the informer was credible or his information reliable, and would therefore be insufficient under *both* prongs of *Aguilar.*

■ Even if we were to assume that Dodd personally communicated with the affiant, the affidavit clearly fails to satisfy the second prong of *Aguilar.* There is no indication of who Dodd is or why the affiant considers him to be credible or his information reliable.[3] We do note that *Aguilar* and its progeny generally involve informers whose names are concealed for security reasons. However, the assumption that the hearsay affidavit before us contains a named informer does not change the requirement that the affidavit pass the *Aguilar* two-prong test.[4] The informer in the affidavit before us is unidentified; an informer's name, with nothing more, does not supply a neutral magistrate with the neces-

---

2. In *United States v. Smith*, 462 F.2d 456 (8th Cir. 1972), it was said that:

"It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. See *Spinelli v. United States*, 393 U.S. 410, at 416–417, 89 S.Ct. 584, 21 L.Ed.2d 637, discussing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred 'that the informant had gained his information in a reliable way.' *Spinelli, supra*, 393 U.S. at 417, 89 S.Ct. at 589. The magistrate must canvas the affidavit and the informer's tip as a whole and measure it against *Aguilar* standards in order to assess its probative value."

And see, *United States v. Fiorella*, 468 F.2d 688 (2d Cir. 1972); *United States v. McCoy*, 478 F.2d 176 (10th Cir. 1973), cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973). See also, *United States v. Kleve*, 465 F.2d 187 (8th Cir. 1972).

3. We note that on the bottom of the complaint which accompanied the affidavit shown the magistrate there appears the following:

"WITNESS FOR THE EXAMINING TRIAL: F. G. DODD 1240HPD."

The meaning of this inscription is not clear. We suppose that it might be the badge number of a police officer of the Houston Police Department. On the other hand, it could well be the number of a complaint filed by F. G. Dodd. Of course, it might mean something entirely different. In any event, this notation adds nothing to the complaint and affidavit which would provide a sufficient basis upon which a finding of probable cause could be made.

4. There are few cases on this point; however, it is inescapable that a mere name, with no additional information to enable the magistrate to determine the reliability of the named person, is no more sufficient than the bare phrase, "confidential informer." See *U. S. v. Cotham*, 363 F.Supp. 851 (W.D.Tex. 1973), where the *Aguilar* test is applied to an affidavit containing a named informant.

sary indicia of reliability upon which to base a finding of probable cause. Thus, with respect to the second prong of *Aguilar*, the affidavit before us is clearly deficient. *Kemp v. State*, 464 S.W.2d 141 (Tex.Cr.App. 1971); *Lowery v. State*, 499 S.W.2d 160 (Tex.Cr.App.1973).

■ It has been held that a hearsay affidavit, otherwise insufficient under *Aguilar*, may be buttressed with corroborating facts obtained in surveillance or information obtained from other sources. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Polanco v. State*, 475 S.W.2d 763 (Tex.Cr.App.1972). The facts recited for corroboration purposes must, however, be based upon the personal knowledge of or observations by the affiant. *Ruiz v. State*, 457 S.W.2d 894 (Tex.Cr.App. 1970) (concurring opinion). The affidavit before us contains no such corroborating facts as are calculated to bring into play this means of buttressing an insufficient affidavit.

■ It has also been indicated by the Supreme Court, though not specifically held, that a declaration against penal interest on the part of an informer, contained in the affidavit, may be sufficient to support the reliability and credibility of an informer. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). See also, *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App., decided Oct. 15, 1975). However, the affidavit before us contains no such declaration against penal interest on the part of F. G. Dodd.

We note, as we did in *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.1974), that:

"We do not intend to be overly strict or technical in our interpretation of affidavits supporting search warrants, recognizing that they must be written by working officers having limited time. We adhere to the 'common sense' interpretations of such affidavits, but in doing so we must stay within the boundaries of constitutional requirements." 503 S.W.2d at 803.

We must conclude that the affidavit before us provided the magistrate with no basis for an independent determination of probable cause and the arrest warrant that issued was not valid. See *Lowery v. State, supra; Kemp v. State, supra; Ruiz v. State, supra* (concurring opinion, footnote No. 2).

The State contends that the legality of the seizure of the heroin is not dependent upon a showing of consent to enter to execute the arrest warrant. This contention rests upon the assumed validity of the warrant for the arrest of Marion Ray Lester; this assumption is incorrect inasmuch as we have held the arrest warrant to be invalid.

■ The appellant was arrested as a result of Officer White's having seen him in possession of the package of heroin. Contraband which is in plain view may be lawfully seized without a warrant by an officer who is lawfully on the premises. See, e. g., *Alberti v. State*, 495 S.W.2d 236 (Tex.Cr. App.1973); *Legall v. State*, 463 S.W.2d 731 (Tex.Cr.App.1971); *Elliott v. State*, 450 S.W.2d 863 (Tex.Cr.App.1970); *Jackson v. State*, 449 S.W.2d 279 (Tex.Cr.App.1970); *Simpson v. State*, 486 S.W.2d 807 (Tex.Cr. App.1972). The question raised here is whether or not Officer White was lawfully in a position to see the commission of the offense of possession of heroin in "plain view." In light of the invalidity of the arrest warrant, we must decide whether the warrantless search of the premises properly followed a voluntary consent by the occupants to enter the building to serve the arrest warrant. Therefore, consent is an issue here.

■ An individual may waive the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures by consenting to a search. E. g., *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Allen v. State*, 487 S.W.2d 120 (Tex.Cr.App.1972); *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr.App.1972);

*DeVoyle v. State*, 471 S.W.2d 77 (Tex.Cr. App.1971). However, the burden is upon the prosecution to show the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The burden requires the prosecution to show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Allen v. State, supra.*

■ A search cannot be justified as lawful on the basis of consent where that "consent" has been given only after the official conducting the search asserts that he has a warrant. *Bumper v. North Carolina, supra; Stephenson v. State*, 494 S.W.2d 900 (Tex. Cr.App.1973). In *Bumper*, the Supreme Court said:

"The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

"When a prosecutor seeks to rely upon a consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.

". . .

"When a law enforcement officer claims authority to search a home under a war-

rant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion— albeit colorable lawful coercion. Where there is coercion, there cannot be consent." 391 U.S. 543, at 548–550, 88 S.Ct. 1788, at 1791, 20 L.Ed.2d 797.

Officer Ruchti testified that he initially knocked on the doors of the building and identified himself and those with him as police officers. Officer White testified that the offense report he dictated indicated that the occupants of the building were informed the officers possessed two arrest warrants for Marion Ray Lester before the keys were passed between the doors. Detective Donovan testified that Detective Hanning informed the occupants that he possessed arrest warrants for Lester. Detective Hanning, the lead officer, testified that he told the occupants of the building he had warrants for Lester's arrest and that, after so informing the occupants, someone passed the keys to the padlock through the gap between the doors.[5]

The record conclusively shows that the officers gained entry to the building by announcing that they had arrest warrants for Lester, effectively informing the occupants that they had "no right to resist the search." See Art. 15.25, V.A.C.C.P.[6]

■ Submission to authority cannot here be disguised as a free and voluntary consent to search. We find that the consent to enter and search the premises was not freely and voluntarily given. We therefore hold that Officer White was not lawfully on the premises when he seized the heroin and it should not have been admitted in evidence.

---

5. We note that Officer Ruchti took the stand when the State reopened during the pretrial suppression hearing; his testimony that he did nothing other than identify himself as a police officer before the keys were passed out is consistent with that of the other officers who testified that it was Detective Hanning, the lead officer, who informed the occupants that he had arrest warrants, where-

upon the keys were passed through the doors to Officer Ruchti.

6. Art. 15.25, V.A.C.C.P. provides:
   "In case of felony, the officer may break down the door of any house for the purpose of making an arrest, if he be refused admittance after giving notice of his authority and purpose."

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge (concurring).

The result reached is correct, but that part of the affidavit as follows:

"PROBABLE CAUSE:

"F. G. Dodd personally observed and identified above Defendant acting as a principal in the commission of above offense."

states facts upon which the affidavit was made. Thus, only one of the requirements of *Aguilar v. Texas*, 387 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the reliability of the informant, is missing, not both as held by the majority.