**Michael MADDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–81–0002–CR.**

Court of Appeals of Texas, Amarillo.

Feb. 16, 1982.

Rehearing Denied March 15, 1982.

Law Offices of O'Shea & Hall, P.C., Mark C. Hall, Lubbock, for appellant.

John T. Montford, Crim. Dist. Atty., Marvin Williams, Jr., Asst. Crim. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C. J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Michael Madden was tried for aggravated robbery. After finding him guilty, the jury assessed punishment at thirty years imprisonment.

In his grounds of error one and two, appellant contends the trial court erred in failing to grant his Motion to Suppress his confession and in admitting it into evidence, alleging his arrest was made without probable cause. We agree and accordingly reverse.

Briefly, the facts are as follows. C. O. Bain, a dealer in used furniture and appliances, was robbed at knife-point of one hundred and seventy-five dollars when he went to a Lubbock residence to buy some

appliances. An investigation of the crime scene revealed the house was empty except for assorted pieces of furniture and two unopened letters addressed to "Carl Cork" as addressee. A more complete recitation of the facts accompanies each ground of error.

By his first and second grounds of error, appellant contends his signed confession should have been excluded from evidence because it was obtained through exploitation of his illegal arrest. We turn first to the question whether appellant's arrest was made with probable cause.

■■■ The warrant upon which appellant was arrested is supported by a felony complaint.[1] The pertinent portions state that the complainant "has good reason and does believe" that appellant "while in the course of committing theft and with intent to appropriate property of Roy Virgil Qualls . . . without the effective consent of Roy Virgil Qualls, and with intent to deprive the said Roy Virgil Qualls of said property, did then and there place the said Roy Virgil Qualls in fear of imminent bodily injury . . . ." Failure to include an averment of personal knowledge renders a supporting complaint a hearsay complaint, subject to the *Aguilar* test.[2] *Evans v. State*, 530 S.W.2d 932, 936 (Tex.Cr.App.1975). It must, therefore, set out for the magistrate both the underlying circumstances upon which the informer concluded that the accused committed the act and the basis for the affiant's belief that the informer is reliable. *Id.* Thus, where the complaint supporting an arrest warrant contains no allegation of personal knowledge, indicates no source for the affiant's belief and does not set forth an alternative

basis upon which a magistrate could rest a finding of probable cause, it is insufficient to support the issuance of an arrest warrant. *Id.*

■■■ The complaint supporting the warrant before us is entirely conclusionary. The issuing magistrate could not have independently judged the sufficiency of the facts relied upon to show probable cause, and must necessarily have accepted the complainant's "belief" without question. In *Knox v. State*, 586 S.W.2d 504 (Tex.Cr.App. 1979), the Court of Criminal Appeals said of a complaint substantially similar to the one here in question:

> The actual basis for the complainant's conclusion is omitted from the complaint. The complaint contains no allegations that the complainant spoke with personal knowledge of the matters contained [there]in and [does] not indicate any source for the complainant's belief, nor set up sufficient information to support an independent judgment that probable cause existed. *Id.* at 506.

We are compelled to conclude that this complaint is not self-supporting and the warrant issued pursuant to it invalid. Unless, therefore, an independent basis for probable cause existed at the time of arrest, evidence obtained through exploitation of the arrest was inadmissible at appellant's trial. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 568–69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971).

The State vigorously asserts the arresting officers had sufficient probable cause at the time of arrest to validate the warrantless arrest.[3] Citing *Ortega v. State*, 414 S.W.2d

1. The complaint is in the record before us. *See: Dusek v. State*, 467 S.W.2d 270, 272 (Tex. Cr.App.1971).

2. *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). The standards for hearsay affidavits supporting search warrants set forth in *Aguilar* apply equally to hearsay affidavits supporting arrest warrants. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 565–66, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971).

3. We do not consider here the State's argument that the arresting officer's knowledge of an indictment against appellant for the Qualls robbery created a presumption of probable cause. We find nothing in the record to indicate any of the officers involved in the arrest knew of the indictment. The State contends that Sergeant Nelson's knowledge of the warrant, which contains on its face the notation "[i]ndicted by Grand Jury" should be imputed to the arresting officers. Nelson, however, testified he never saw the warrant, thus, he could not have been aware of the indictment. Since none of the

465 (Tex.Cr.App.1967), the State urges appellant's arrest was legal under Article 14.-04, Tex.Code Crim.Pro.Ann. (Vernon 1977), because police acted on the basis of a tip from a reliable informant and believed they lacked time to procure a warrant.[4] We disagree.

The record indicates that at about 9:30 a. m. on August 20, 1979, Sergeant Doyle Nelson of the Lubbock Police Department received a "Crime Line" tip from an anonymous caller, who told him appellant and D___ G___, a juvenile, had robbed C. O. Bain and were currently staying at a certain Lubbock address. Nelson testified he verified the informant's reliability with records detailing the veracity of tips previously supplied by this informer, then telephoned the sheriff's office and discovered the above discussed warrant for appellant's arrest. He took the warrant number and relayed his information to Detectives Brown and Ussery. By 10:30 a. m., the two detectives, along with Detective Ashmore of the Robbery Division, were *en route* to the address Nelson gave them. Although the caller had given no indication appellant was preparing to flee, Ashmore testified they "didn't believe ... we had all that much time" to obtain a warrant.

After arriving at the house, Ussery and Ashmore knocked at the front door while Brown waited, with his gun drawn, in the back. After knocking several times, the officers gained entry and found the juvenile, his mother, and his sister inside. At about the same time, appellant ran through the back door and was immediately apprehended by Brown. In response to the officer's request for identification, appellant said his name was "Carl Cork." Brown testified he knew of the report on the Bain robbery, which contained information con-

cerning the envelopes found at the scene of the robbery. Brown placed appellant under arrest on the basis of that information and because he could show no proof of identification. Appellant, the juvenile, and his sister were all taken to the Lubbock Police Department.

Where the tip which forms the basis for an officer's belief that he has no time to procure a warrant is insufficient under *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the arrest is illegal unless corroborated by independent police observations. *Cole v. State*, 484 S.W.2d 779, 782–83 (Tex.Cr.App.1972). Moreover, these observations must reveal some information which tends to corroborate that portion of the tip that a felony is being or has been committed. *Id.* at 782.

In the instant case, the informer was reliable, and there was some testimony police felt they lacked time to obtain a warrant. There was, however, no partial, independent corroboration of the information that a robbery had been committed. Police found appellant in the place their tipster had said he would be; however, this circumstance in no way supports an inference that he had committed the robbery.

The State points to Brown's testimony that appellant fled when they arrived and announced their presence as a circumstance corroborative of the "Crime Line" tip. Even if it could be argued that this act tended to corroborate the information that he had committed a felony, it could not be utilized to bolster the lack of probable cause. Police did not have probable cause to arrest appellant when they came on to the curtilage of the house, thus, the fact that he ran out when they arrived cannot validate the otherwise illegal arrest.[5] In

---

officers had actual knowledge of an indictment, no presumption of probable cause could have arisen. *See: Talbert v. State*, 489 S.W.2d 309, 311 (Tex.Cr.App.1973). Moreover, the capias issued pursuant to the indictment is statutorily insufficient to support an arrest because it fails to name the offense charged. Tex.Code Crim. Pro.Ann. art. 23.02 (Vernon 1966).

4. The State does not contend the tip alone was sufficient to establish probable cause, presumably because the anonymous informer did not assert personal knowledge, nor did he provide a basis upon which police could have judged his credibility. *See: Brunson v. State*, 506 S.W.2d 594, 595–96 (Tex.Cr.App.1974).

5. Protection of the 4th Amendment extends to the area surrounding a residence and informa-

*Lowery v. State,* 499 S.W.2d 160 (Tex.Cr. App.1973), the court said "[w]hen officers enter the premises to effect a warrantless arrest ... they must have adequate cause to suspect an offense *before* they enter, and justification cannot be developed afterwards." *Id.* at 164.

The result in *Ortega,* 414 S.W.2d 465, may easily be harmonized with our result here. Ortega was in a local Pizza Hut when police entered to arrest him, pursuant to a reliable informant's tip that he would be there and in possession of narcotics. When he saw the officers, Ortega threw a balloon, filled with what was later identified as heroin, across the room. Police retrieved it and arrested him. Officers testified they believed, on the basis of the tip from their informant, they lacked time to procure a warrant. The court held Ortega's warrantless arrest was legal, and approved admission of the heroin into evidence because the tipster was reliable and police felt there was no time to get a warrant. Unlike the case before us, however, police independently corroborated the information when they entered a public place and observed Ortega throw away an object commonly used to contain narcotics. This act directly substantiated the tip that he was holding narcotics, a felony, and provided sufficient probable cause to support the arrest.

■ We hold appellant's arrest was made without probable cause, therefore, his arrest and subsequent detainment were unlawful. Having determined the initial illegality, we turn now to the question whether his signed confession was derived through exploitation of the illegal arrest, rendering it inadmissible at trial, or conversely, was "sufficiently an act of free will to purge the primary taint of the unlawful arrest" and permit its use before the jury. *Alonzo v. State,* 591 S.W.2d 842, 847 (Tex.Cr.App.1979).

The record shows that after appellant, the juvenile, and his sister arrived at the police department, the trio was separated.

Ashmore took the juvenile to his office for questioning. One of the other arresting officers took appellant to an empty office and advised him of his *Miranda* rights. During this period, police learned appellant was not "Carl Cork," but Michael Madden instead. Appellant spent approximately five minutes in the empty office, then he and Brown joined Nelson in his office. Appellant was questioned, but not extensively. He claims, however, that he asked at least four times if he could call his attorney and was denied his request.[6] Further, appellant testified Nelson told him the juvenile had made a statement implicating him in the Bain robbery. Nelson, of course, disputed this claim and stated appellant had never asked *him* if he could phone a lawyer. Brown was unable to remember whether appellant had made such a request, but stated he could have done so. He did, however, recall that after his arrest, appellant had asked someone at the house to contact his attorney.

Appellant remained there with Brown and Nelson for about twenty minutes. Meanwhile, Ashmore, in questioning the juvenile had discovered his minor status. He released the boy to juvenile authorities, but not before extracting from him a statement admitting he and appellant had robbed C. O. Bain. After the proper authorities had taken custody of the juvenile, Ashmore took appellant to his office, gave him the *Miranda* warnings, and began interrogating him. The detective testified appellant at first denied any involvement in either the Qualls or Bain robbery, then suddenly changed his mind and confessed.

Appellant claimed, to the contrary, that he continued to ask for his lawyer, but then confessed because the juvenile had given a statement and he "didn't figure that they would give me my phone call. They would just stick me in jail; that is what they did last time." Ashmore was unwilling to state with certainty that appellant had not asked

tion obtained by trespass on to the curtilage cannot be used to validate a warrantless arrest. *Gonzales v. Beto,* 266 F.Supp. 751, 754 (W.D. Tex.1967).

6. By his last point of error, appellant asserts his confession should have been suppressed because he was denied his right to effective assistance of counsel.

to speak with an attorney. He asserted positively that, had he made such a request, it would have been granted and, further, that appellant had been willing to sign both statements without seeing his lawyer first. However, when asked by the prosecutor whether appellant had requested a lawyer after being advised of his rights, the detective replied "[h]e could have possibly said that he wanted to talk with an attorney and ... made a telephone call to an office and he wasn't in then ... and decided he couldn't wait any longer, he would go ahead, anyway." Appellant dictated to a secretary confessions to the Qualls and Bain robberies. He signed both statements at 12:25 p. m.

Evidence derived as a direct or indirect result of an unlawful arrest is a "fruit" of the official illegality to which the exclusionary rule applies. *Wong Sun v. United States*, 371 U.S. 471, 484, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979). This rule is designed to effectuate the "fundamental constitutional guarantees of sanctity of home and inviolability of the person" embodied by the Fourth Amendment. *Id.* at 484, 83 S.Ct. at 416.

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Supreme Court noted the Fourth Amendment analysis necessary for a determination whether a casual connection exists between a confession and illegal arrest is necessarily *ad hoc*. *Id.* at 603, 95 S.Ct. at 2261. The *Brown* court, however, provided some guidance on the matter in the form of four factors it considered relevant to such a determination: (1) the temporal proximity of the arrest and confession, (2) the presence of intervening circumstances, (3) the purpose and flagrancy of official misconduct, and (4) whether *Miranda* warnings were given. *Id.* at 603–04, 95 S.Ct. at 2261–62. The court properly stated that the giving of *Miranda* warnings was merely a threshold requirement for the Fourth Amendment analysis, because if no warnings were given, the Fifth Amendment would require suppression of the confession. *Id.* at 601, 95 S.Ct. at 2260; *e.g., Green v. State*, 615

S.W.2d 700, 706 (Tex.Cr.App.1980). The remaining elements of the test should be viewed in the light of the policies underlying the exclusionary rule; specifically, deterrence of unlawful police activity and preservation of judicial integrity. *Brown v. Illinois*, 422 U.S. at 599, 95 S.Ct. at 2259.

The "casual connection" test described in *Brown* was recently applied by the Court of Criminal Appeals in *Green v. State*, 615 S.W.2d 700. Green was arrested at 2:30 a.m. on the basis of what police believed was a valid arrest warrant charging him with murder. After driving him around Lubbock for an hour, police brought him to the sheriff's office, where he was booked, warned, and questioned briefly. About thirty minutes later, at 4:00 a. m., police began interrogation and at 4:30 a. m., Green began giving his statement. The confession was completed at 7:30 a. m. Green did not see a lawyer, was not taken before a magistrate (though one was in the building most of the morning), and his parents were refused permission to see him while his statement was being taken.

The court reversed Green's conviction, holding his confession should not have been admitted into evidence because it was obtained through exploitation of an illegal arrest. The entire course of conduct engaged in by police, the court noted, was investigatory in nature. Moreover, interrogation started almost immediately after Green's arrest, he did not confer with an attorney, and was not taken before a magistrate. Thus, the close temporal proximity of the arrest to the confession and the lack of intervening circumstances overrode the lack of flagrant or intentional official misconduct. Quoting *Dunaway v. New York*, 442 U.S. 200, 219, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1979), the court said "[t]o admit appellant's confession in such a case would allow 'law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the "procedural safeguards" of the Fifth'." *Green v. State*, 615 S.W.2d at 709.

The relevant facts in the instant case, as in *Green*, show an unbroken casual connection between appellant's arrest and confession. The arresting officers acted on the belief they had a valid warrant. They admitted, however, that they made no attempt to secure the warrant or get a description of appellant, even though the informer gave them no reason to believe they had no time to do so. Further, police did not know the man they had arrested was the person named in the warrant until after arriving at the police department. The link, therefore, between the officer's reliance on the warrant and their arrest of appellant was quite weak, at best.

Appellant was arrested sometime after 10:30 a. m. and interrogation began almost immediately thereafter. His confession was completed and signed at 12:25 p. m., less than two hours after his apprehension. Moreover, he was not taken before a magistrate prior to questioning, though his arrest was made during the morning hours of a weekday, and a magistrate clearly would have been available. Tex.Code Crim. Pro.Ann. art. 15.16 (Vernon 1977). Neither did appellant have an opportunity to consult with counsel before or during interrogation.[7] There were, therefore, no intervening circumstances which could have attenuated the taint of the illegal arrest, and the time span between the arrest and confession was very short. Where a confession is derived directly from exploitation of an unlawful arrest, the good faith of arresting officers cannot serve to dissipate entirely the taint of the illegality. *Green* requires we hold that appellant's confession was a fruit of an illegal arrest and its introduction into evidence was reversible error. We sustain grounds of error one and two.

Because certain of his remaining points may arise upon retrial of the cause, we must reach them before finally disposing of this matter. By his fourth ground of error, appellant contends his statement that he was "Carl Cork," made in response to Brown's request for identification, was inadmissible before the jury because it was elicited after his arrest and before he was advised of his *Miranda* rights. The State contends the statement was *res gestae* of the arrest and admissible under Article 38.-22 § 5, Tex.Code Crim.Pro.Ann. (Vernon 1979). Because we hold appellant's arrest was illegal, we need not decide whether the utterance was *res gestae* of the arrest. Verbal statements made contemporaneously with an unlawful arrest are "fruits" of the initial illegality, thus, admission of such evidence is barred by the exclusionary rule. *Wong Sun v. United States*, 371 U.S. at 485–86, 83 S.Ct. at 416; Tex.Code Crim.Pro. Ann. art. 38.22 § 5 (Vernon 1979). The trial court ruled appellant was under arrest when Brown asked for his identification, and his reply was made immediately after the unlawful arrest. We are therefore constrained to find that the questioned statement was a fruit of the illegal arrest and that its admission into evidence was error.

In his fifth ground of error, appellant urges the trial court erred in admitting oral testimony that letters addressed to "Carl Cork" were found at the scene of the robbery because such was hearsay and violated the Best Evidence Rule. We find this contention to be without merit. The challenged testimony concerned only the fact that the letters were found, and not the truth of the matter stated therein. We

---

7. Had our disposition of this case required us to do so, we would be inclined to hold the State did not meet its "heavy burden" to show an affirmative, voluntary waiver by appellant of his right to have assistance of counsel. Detective Ashmore, who formally interrogated appellant and took his statement, was unable to controvert appellant's contention that he asserted his right to consult with a lawyer. Further, of Brown and Nelson, only Nelson asserted appellant did not ask *him* for an attorney. Brown's recollection of appellant's request for someone at the house to call his attorney, combined with appellant's own allegation that he repeatedly asked permission to call his lawyer, creates a strong inference that he did ask for assistance of counsel. It was the State's burden to affirmatively show that he did not do so or if he did ask, that interrogation resumed only after he voluntarily and intelligently waived his right. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The State clearly did not meet this burden.

find no violation of the hearsay rule in such a case, nor does the Best Evidence Rule apply. *Haynes v. State*, 475 S.W.2d 739, 742 (Tex.Cr.App.1971). The court did not abuse its discretion in admitting the testimony. *Jackson v. State*, 575 S.W.2d 567, 570 (Tex.Cr.App.1979).

Finally, appellant asserts the evidence was insufficient to prove the knife used in the aggravated robbery was a deadly weapon as defined in section 1.07(a)(11)(B), Tex. Penal Code Ann. (Vernon 1974). Under the rule announced in *Hooker v. State*, 621 S.W.2d 597 (Tex.Cr.App.1980), we must consider this challenge to the sufficiency of the evidence even though we have reversed the case on other grounds because, if sustained, an acquittal would be required. *Id.* at 598.

C. O. Bain was the only witness to testify concerning the deadly potential of the knife. He stated that, after he had gone into the house, he felt the presence of someone behind him. This person murmured something Bain could not decipher, so he turned around and looked over his shoulder. When he did so, he saw a man holding a butcher knife over his shoulder. He testified the blade was somewhere between 6 and 8 inches long, and that it could have killed him or caused serious bodily injury. He said he gave them his purse because if he had not, they probably would have killed him.

A knife is not a deadly weapon *per se. Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Cr.App.1980). It can qualify as a deadly weapon by showing "the manner of its use, its size and shape, and its capacity to produce death or serious bodily injury." *Id.* Expert testimony is not necessary to prove the weapon is deadly, but can be of great help where the evidence on the issue is weak. Moreover, a wound need not be inflicted; the most important factor is the manner in which the weapon is used. *Denham v. State*, 574 S.W.2d 129, 130 (Tex.Cr. App.1978); *Dominique v. State*, 598 S.W.2d 285, 286 (Tex.Cr.App.1980).

In the case before us, the weapon was a butcher knife with a blade at least 6

inches long. The victim was in close proximity to appellant, and testified he thought the knife could have killed or injured him seriously. Here, the evidence was sufficient to show that, in the manner of its use, the knife was a deadly weapon. We overrule appellant's ground of error six.

In accordance with our disposition of grounds of error one and two, we reverse the judgment of conviction and the cause is remanded.