Johnny Eugene **HUDSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 57499.

Court of Criminal Appeals of Texas,
Panel No. 1.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 31, 1979.

J. T. Mora, Jr. and Ralph J. Bernsen, Sr., La Marque, for appellant.

James F. Hury, Jr., Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appellant was convicted of aggravated kidnapping and assessed a life sentence.

We are faced here with a warrantless search of an automobile by policemen inves-

tigating an offense, an issue with which the United States Supreme Court has struggled for over fifty years. We have examined the numerous cases of that Court for guidance, and have attempted to assimilate the principles therein as the basis for our decision.

Appellant was charged with kidnapping a six year old female, the daughter of his former girlfriend. Several witnesses found the child alone on a beach, and they almost collided with a car speeding from the area. When the police and the child's mother arrived, the witnesses related a description of the car they had observed. The mother immediately recognized it as belonging to appellant, and the police were directed to his home.

The car was parked by appellant's house. He was arrested inside his home. An unidentified man and woman were also present. An evidence technician was called, and he took photographs of the car. The photographs included the outside of the vehicle and several close-ups of the interior. On voir dire examination by defense counsel, the officer admitted opening the doors of the car to photograph the inside. At some later point the car was impounded and taken to the police station. A section of the seat cover and a separate section of the foam rubber seat cushion were cut out and chemically analyzed for possible blood stains. The kidnapping victim had received minor cuts and abrasions, and her blood type was shown to be group A. The chemical analysis revealed that there were type A blood stains on both the seat cover and foam cushion. The entire search was conducted without a warrant.

At trial the State introduced the photographs, seat cover, foam cushion and testimony of the chemist concerning the blood stains. Appellant's counsel objected to the introduction of the evidence because it was obtained from an illegal search and seizure of the automobile.

As we perceive the questions presented, there are actually several searches or potential searches involved in this case: (1) the photographs taken of the outside of the car; (2) the photographs taken of the inside of the car after the officer opened the doors; (3) the impounding of the car and driving of it to the police station; and (4) the removal of the seat cover and cushion for the purpose of chemical analysis. We conclude that the taking of photographs of the car's exterior did not constitute a "search" within the meaning of the Fourth and Fourteenth Amendments. The close-up photographs taken of the car's interior were the product of a warrantless search, however, and they came within Fourth Amendment protection.[1] The seizure of the car and its transportation to the police station required a showing that exigent circumstances existed at appellant's home the night of the search.[2] The taking of the seat cover and cushion at the police station was justified only if exigent circumstances existed at appellant's home that would have allowed such a seizure at appellant's residence.[3] Finally, we conclude that the State failed to demonstrate that sufficient exigencies existed at the time appellant was arrested to justify a warrantless search and seizure of the car. Therefore the interior automobile photographs, seizure of the car, and taking of the seat cover and cushion were searches and seizures in violation of the Fourth and Fourteenth Amendments.[4]

A.

■ It is of course fundamental that "unreasonable searches and seizures" are prohibited by the Fourth Amendment to the United States Constitution. The Supreme Court has determined that the focus of attention is not any particular constitutionally protected area, but is instead an "expectation of privacy." *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Amendment pro-

1. These issues are discussed in part "B" of this opinion.

2. See part "C".

3. See part "D".

4. See part "E".

tects that which a person "seeks to preserve as private, even in an area accessible to the public . . . ." *Id.*

The Court has placed emphasis on the importance of a judicial issuance of a search warrant because "it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1976) [citing *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)]. As a result the Court has consistently held that a warrantless search is unreasonable *per se* unless it comes within an exception to the warrant requirement. *Almeida-Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. United States District Court,* 407 U.S. 297, 314–21, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana,* 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Katz v. United States,* supra 389 U.S. at 357, 88 S.Ct. 507; *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *Johnson v. United States,* supra 333 U.S. at 13–15, 68 S.Ct. 367; *Agnello v. United States,* 269 U.S. 20, 32, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

The exceptions to the warrant requirement have been described as being "jealously and carefully drawn. . . ." *Jones v. United States,* supra. Those who assert an exception carry the burden of proving the need for it. *United States v. Jeffers,* supra. To meet that burden there

must be "a showing . . . that the *exigencies* of the situation made that course imperative. . . ." *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). [Emphasis added].

One of the primary exceptions to the warrant requirement has been generally labeled the "automobile exception." *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). "[L]ess rigorous warrant requirements govern" cases involving searches of automobiles because "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible" and "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976).

**B.**

The initial question is whether the photographs taken by the evidence technician constituted a "search" at all within the meaning of the Fourth and Fourteenth Amendments. As noted earlier, a distinction should be made between photographs of the car's exterior and interior because of the different levels of intrusion involved.

The evidence technician took several photographs of the exterior of appellant's automobile as it was parked outside the home. In our view the controlling case is *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1973). Police were investigating a murder, and they believed that the victim's car had been pushed off an embankment by another automobile. The police had probable cause to believe that the defendant's car was used in the offense. The car was parked in a public lot. The officers examined the tire tread and scraped paint samples off the exterior of the car for comparison to the crime scene. The Court framed the issue as follows:

"The evidence with which we are concerned is not the product of a 'search' that implicates traditional considerations

of the owner's privacy interest. It consisted of paint scrapings from the *exterior* and an observation of the tread of a tire on an operative wheel. The issue, therefore, is whether the examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect." *Cardwell v. Lewis*, supra at 588–589, 94 S.Ct. at 2468. The Court concluded that the "examination" was allowable because the defendant had no reasonable expectation of privacy that is protected by the Constitution. The Fourth and Fourteenth Amendments simply do not prohibit the type of examination conducted on the exterior of the vehicle.

It is true that the car was taken from a public parking lot in *Cardwell*, but that was not the basis of the Court's decision.[5] The gravamen of the holding was that the owner of the car had no reasonable expectation that the *exterior* of his car would not be examined. We conclude that the same reasoning applies to photographs taken of the exterior of appellant's car.

■ The more difficult question is the photographs taken of the interior, after the officer opened the car doors, which revealed stains appearing to be blood. We find no cases directly addressing this question.[6] Some guidance is provided from *Cardwell v. Lewis*, supra. The rationale provided for that case was not that the examination of the automobile's exterior was allowable because of some *exception* to the warrant requirement. Rather, the Court decided as a matter of first impression that the type of

activity itself was not intended to be prohibited by the Fourth and Fourteenth Amendments. The basis for that determination was that the exterior of an automobile is exposed to the public, and the intrusion into any expectation of privacy is so slight as to be beyond constitutional protection. That reasoning does not apply, however, when an officer opens the door of an automobile to examine its contents. "This is not to say that no part of the interior of an automobile has Fourth Amendment protection." *Cardwell v. Lewis*, supra 417 U.S. at 591, 94 S.Ct. at 2470. The amount of intrusion is significantly greater, and the action does come within the protection of the Fourth Amendment. We see no significant difference in degree of intrusion between photographing the interior of a car, opened by the police for that purpose, and taking physical evidence from the interior. It is incumbent on the State to prove exigent circumstances and an exception to the warrant requirement to justify opening the doors and taking interior photographs. For purposes of this case, therefore, the photographs of the inside of the car must be justified by a showing of exigent circumstances at appellant's home the night of his arrest.

### C.

The next "search and seizure" involved in this case is the taking of the car and its transfer to the police station. There can be no question that the police had probable cause to believe that appellant's car was the one used in the kidnapping. The matter we address here is whether probable cause to

5. A second issue in *Cardwell* was the seizure of the car and the taking of it to the police station. On that issue the Court placed great emphasis that a public parking lot was involved. *Cardwell v. State*, supra at 593–595, 94 S.Ct. 2464. See the discussion of that issue in part "C" of this opinion.

6. Lower federal courts have dealt with situations in which police officers opened doors to obtain vehicle identification numbers of cars suspected to be stolen. Several cases have held the searches to be proper: (1) *United States v. Graham*, 391 F.2d 439 (6th Cir. 1968) [on the theory that police may obtain numbers of cars in their possession for bookkeeping and

inventory purposes], (2) *United States v. Polk*, 433 F.2d 644 (5th Cir. 1970) [on the theory that the registration number was in "plain view"], and (3) *United States v. Williams*, 434 F.2d 681 (5th Cir. 1970) [on the theory that obtaining the registration number is not a "search" within the meaning of the Fourth Amendment]. But also see *Glisson v. United States*, 406 F.2d 423 (5th Cir. 1969), which reversed on the ground that obtaining the registration number did constitute a search, and that insufficient exigent circumstances were proven by the government to establish an exception to the warrant requirement.

believe the car was used in the offense is enough alone to justify seizing it for transport to the police station, or whether a showing of exigent circumstances is also required.

This precise question was decided in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970). Police arrested the defendant in his house and impounded his car. The Court described the issue as follows:

> "The State's third theory in support of the warrantless seizure and search of the Pontiac car is that the car itself was an 'instrumentality of the crime,' and as such might be seized by the police on Coolidge's property because it was in plain view." *Coolidge v. New Hampshire*, supra at 464, 91 S.Ct. at 2037.

The Court rejected that argument and held that the seizure was improper because there were no exigent circumstances proven.

The Court gave several reasons for its conclusion. "The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence." *Coolidge v. New Hampshire,* supra at 468, 91 S.Ct. at 2039. Plain view alone only increases the degree of probable cause, which is insufficient in absence of exigent circumstances. *Id.* "The second limitation is that the discovery of evidence in plain view must be inadvertent." *Id.* at 469, 91 S.Ct. at 2040. When the police know the location of the evidence in advance and go to it with the intention of seizure, there is no "plain view." *Id.* at 470, 91 S.Ct. 2022.

In *Cardwell v. Lewis,* supra, the police had probable cause to believe the seized car had been used in the offense. They found the car in a public parking lot. The Court did not adopt the "plain view" approach to the case, but instead determined that other exigent circumstances existed because of open access to the car at a public parking lot. The *exigency* of the situation justified the seizure.

In the present case, the police had probable cause to believe that the car was the "instrumentality of the crime," but they went to appellant's home in search of the car. There was no inadvertent discovery of evidence. The plain view doctrine is inapplicable. We therefore conclude that in order for the seizure of the automobile to be constitutional, the State must show exigent circumstances at the time the car was impounded at appellant's home.

### D.

The final search involved in this case was the removal of the section of seat cover and seat cushion for chemical analysis after the car was impounded at the police station. In *Chambers v. Maroney,* the Court held that a warrantless search of an automobile is justified at the police station if such a search would have been proper at the place the car was seized. *Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). The validity of the seizure of the seat cover and cushion therefore depends, just as the interior photographs and the seizure of the automobile, on whether sufficient exigencies existed at appellant's home to justify a warrantless search and seizure.[7]

### E.

We turn now to the determinative issue. Did the circumstances at appellant's home on the night of his arrest bring this case within the "automobile exception" to the search warrant requirement? If not, then the searches and seizures discussed above were improper.

The automobile exception has been used as a general label for a variety of situations. There are at least six categories of searches in vehicles in which the Supreme

---

7. There is no evidence from the State that this search was pursuant to an inventory. *South Dakota v. Opperman,* supra. Nor was any claim made that the police were removing "all valuables," *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967). The case does not fall into the facts of *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1972), in which police were searching for a lost service revolver to prevent it from falling into "improper hands."

Court has allowed police to proceed without a warrant. These categories include: (1) moving vehicles[8]; (2) movable vehicles[9]; (3) frisks during field stops[10]; (4) inventory searches[11]; (5) open field searches[12]; and (6) plain view searches.[13] Only the first two categories are actually within the "automobile exception" which is based on the dual rationale of mobility of the evidence and lessened intrusion into a privacy right. *Cardwell v. Lewis,* supra 417 U.S. at 590, 94 S.Ct. 2464. The State makes no claim that the third or fourth categories apply to this case, and we have discussed in section "C" why "plain view" is inapplicable. The "open field" doctrine is not raised here because the police did not observe appellant performing any act involving the car in an open field.[14]

Since appellant's car was not moving at the time it was encountered by the police, the only possibility available to the State is the "movable" automobile exception. The one case in which the exception was applied is *Cardwell v. Lewis,* supra.[15] The police took the unoccupied car from a public parking lot. The reason we carefully distinguish between "moving" and "movable" vehicles is the readily apparent difference in exigencies involved. A car stopped on a public highway containing alerted occupants carries a high risk that "the car's

contents may never be found again if a warrant must be obtained." *Chambers v. Maroney,* supra 399 U.S. at 51, 90 S.Ct. at 1981. That same exigency may arise with an unoccupied parked car under certain circumstances. The Court in *Cardwell* decided that sufficient exigent circumstances did exist for two reasons. First, "[h]ere, as in *Chambers v. Maroney,* . . . the automobile was seized from a public place where access was not meaningfully restricted." *Cardwell v. Lewis,* supra 417 U.S. at 593, 94 S.Ct. at 2471. Second, there was evidence that the defendant "asked one of his attorneys to see that his wife and family got the car, and that the attorney relinquished the keys to the police in order to avoid a physical confrontation." *Id.* at 595, 94 S.Ct. at 2471–2472.

In *Coolidge v. New Hampshire,* supra, the Court concluded that a parked and unoccupied car did *not* present sufficient exigencies to come within the exception. The primary difference, as emphasized in *Cardwell,* was that the car was taken from the defendant's home where there was less public access. As the Court stated:

> "A person who had the keys and could slip by the guard could drive it away. We attach no constitutional significance to this sort of mobility . . . [I]f *Carroll v. United States,* . . . per-

**8.** *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925).

**9.** *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

**10.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If the officer has reason to believe that his life may be threatened by the presence of a weapon, a warrantless search in a car may be justified. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**11.** *South Dakota v. Opperman,* supra. See also, *Cady v. Dombrowski,* supra.

**12.** *U. S. v. Hester,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). See also, *Jordan v. State,* 576 S.W.2d 825 (Tex.Cr.App.1979).

**13.** *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967). See also, *Coolidge v. New Hampshire,* 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970).

**14.** It is of course also true that a defendant may consent to a search, but the testimony of the police evidence technician showed no consent was given in this case. Additionally, there is a well established exception to the warrant requirement denominated "search incident to arrest" which might apply to some automobile searches. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, the Supreme Court has consistently held that the exception does not apply when the "accused is under arrest and in custody, then a search [is] made at another place . . . ." *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). *Chambers v. Maroney,* 399 U.S. 42, 47, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969).

**15.** In both *Carroll v. United States,* supra, and *Chambers v. Maroney,* supra, the cars were stopped on public roads with the defendants inside.

mits a warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found no case that suggests such an extension of *Carroll*." *Coolidge v. New Hampshire,* supra 403 U.S. at 461 n. 18, 91 S.Ct. at 2035 n. 18. See also, *Stoddard v. State,* 475 S.W.2d 744, 749–750 (Tex.Cr.App.1972).

 The State's sole contention in its brief is that this case should be governed by *Carlton v. Estelle,* 480 F.2d 759 (5th Cir. 1973). A parked car was seized from the defendant's home, but the court distinguished the facts from *Coolidge.* The record clearly established two things that were considered significant: (1) the defendant's mother was aware that the police were looking for him; and (2) the defendant's wife, who was present during the arrest, "was clearly in a position to exercise dominion over the car for innocent reasons or otherwise." *Carlton v. Estelle,* supra at 763. The State argues that the presence of the two persons at the house when appellant was arrested created a similar situation.

We need not decide whether to agree with *Carlton* because the case is distinguishable on its facts, even if correctly decided. There is no evidence in the record as to who the two unidentified people at appellant's house were; that they had any knowledge as to why the arrest occurred; that they knew the car was used in the offense, or that they had access to any means of moving the car. On voir dire examination the police evidence technician testified as follows:

"Q: Did that automobile appear to you to be under the control of Detective Powell and Simmons?

A: Yes, sir.

Q: You did not have any reason to believe that automobile was going to leave anytime soon, did you?

A: No, sir."

The State carried the burden of proving the exception, but no evidence of any exigency was presented. The automobile exception did not apply. The warrantless search was *per se* unreasonable. The complained of evidence should not have been admitted at trial, and it prejudiced appellant's case.

For these reasons the judgment is reversed and the cause is remanded.