**David MONTEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59179.**

Court of Criminal Appeals of Texas, Panel No. 3.

July 16, 1980.

On Rehearing Dec. 17, 1980.

Kent H. Poynor and William T. Knox, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Stanley Keeton, William M. Lamb and L. S. Eubanks, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for the felony offense of possession of more than four ounces of marihuana. The trial court assessed punishment at confinement in the Texas Department of Corrections for three years notwithstanding appellant's sworn motion for probation.

In the three grounds of error presented, appellant contends that the evidence is insufficient to support the jury verdict below; that the fruits of an illegal search and seizure were introduced over his timely objection; and that the trial court erred in refusing to submit a timely requested jury charge on the lesser offense of possession of less than four ounces of marihuana. We sustain the second contention and reverse.

In ground of error number two, complaint is made that fruits of an illegal search and seizure were admitted over appellant's timely objection. At the hearing on the motion to suppress, Officer Kenton Koop of the Dallas Police Department testified that on August 16, 1976, he received information from a confidential informant that appellant was in possession of a controlled substance, namely marihuana. Koop noted that he had received information from his informant prior to August 16, 1976 and that, on each occasion, such information had proven to be true and correct. Based upon this information, Koop obtained a search warrant to search the residence of appellant and proceeded toward that destination. While enroute, however, Koop received additional information from this same confidential informant that the appellant was at a garage on May Street dividing up a quantity of marihuana in excess of one hundred pounds. The informant told the officer that the appellant would not remain at the garage for very long and that he would find the contraband in a 1974 black Chevrolet with Texas license plates HPQ–274.

Koop arrived at the May Street address at approximately 9:45 p. m. and observed the black Chevrolet within a fenced area about thirty to forty feet from the garage with a male occupant sitting in the driver's seat. Koop presented himself to the occupant, later identified as Joe Martinez,[1] who said that he was not the appellant but that appellant could be found inside the garage. The officer found appellant, told him he was a police officer and asked him for the keys to his automobile. Appellant handed the keys to Koop who opened the trunk of the vehicle and discovered two plastic garbage bags containing some twenty–four "kilos" of what he later formed the opinion was marihuana. Koop testified that he did not procure a warrant to search the trunk of the automobile inasmuch as his informant had told him there would not be adequate time to do so. After taking custody of the over fifty pounds of contraband, Koop placed appellant under arrest and then proceeded to the residence to execute the search warrant alluded to above. The wife of appellant met Koop at the front door and, after a search of the residence's attic revealed approximately two hundred pounds of marihuana, she too was arrested.

The thrust of appellant's complaint is that in spite of the fact that Officer Koop effectively had both appellant and his vehicle under control and could well have obtained a search warrant to search the vehicle, he did not do so. Though Koop testified that he did not secure a search warrant because he felt that it was impracticable to do so, appellant advances the contention that no showing was made as to why it was impracticable to secure a warrant, especially given the fact that appellant and his vehicle were both in police custody.

In support of his contention, appellant refers us to *Stoddard v. State*, 475 S.W.2d 744 (Tex.Cr.App.1974), a fact situation not totally unlike the one at bar. The defend-

---

1. Koop recalled that as he sat there Martinez was listening to a radio, either the car radio or a portable transistor one. Martinez testified he was lighting a cigarette with the car lighter when Koop walked up. Whatever Martinez was doing, that the driver's door was open seems undisputed.

ant in *Stoddard* had been taken to the police station following his arrest for possession of marihuana at his office pursuant to a search warrant. The officers requested permission to search his automobile, which was parked on the street near the office where the defendant worked; the defendant, however, refused this request. A key to the vehicle was taken from the defendant during a search of his person at the police station and the officers then proceeded to obtain what they felt was a valid warrant to search the defendant's automobile. The subsequent search revealed a quantity of marihuana in the trunk of the vehicle replete with the fingerprints of Stoddard on one of the containers of contraband. After finding the warrant to search the automobile defective, the Court addressed the remaining contention that the search of the vehicle was nevertheless permissible because "exigent circumstances" effectively precluded the procurement of a warrant at all. The Court, however, concluded that there were no "exigent circumstances" which would have justified a warrantless search of the automobile: the accused was in custody at the time of the search; the police were in possession of at least one set of keys to the automobile; one officer remained with the vehicle while the warrant was being prepared; there was nothing tending to indicate that the vehicle was about to be moved; there was no reason to believe that one of the defendant's compadres might have moved the vehicle; and finally, the defendant could not have alerted anyone to move the automobile inasmuch as he was in continuous police custody from the very moment that he was arrested at his office. But in reversing the defendant's conviction, the Court pointed out:

> "We do not mean to hold that 'exigent circumstances' may never exist in the case of a parked car. Nor does the fact that the place which is searched is an automobile serve as an automatic justification for a warrantless search ... The test is whether 'exigent circumstances' make the obtaining of a warrant imprac-

ticable. In the instant case no showing is made as to why the obtaining of a warrant was not practicable."

475 S.W.2d at 752. See also *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

For its part, the State relies on *Harris v. State*, 486 S.W.2d 88 (Tex.Cr.App.1972), where both *Stoddard v. State*, supra, and *Coolidge v. New Hampshire*, supra, were distinguished. In *Harris*, as here, a confidential informant told police that the defendant would be arriving at the China Doll Lounge in a white Cadillac bearing license plates "LTC 92" with "around 100 capsules of heroin and a bunch of red birds [barbiturates]." The officers saw the accused arrive in the described vehicle, park it, lock it and enter the lounge. Following the defendant into the lounge, the officers arrested him; after a search yielded nothing in the way of contraband, they escorted him back to his vehicle where a search turned up a quantity of heroin. The defendant in *Harris* raised the same contention on appeal that our appellant makes—the lack of exigent circumstances precluded a warrantless search of an automobile which was locked and capable of being secured. The Court, however, pointed out an important factual distinction between *Stoddard* and *Coolidge*, on the one hand, and *Harris*, on the other: the accused in the former were custodially confined before the challenged search was initiated whereas in the latter the accused, though under arrest and subjected to a fruitless search of his person, was still present at the scene during the search of his automobile. In this different situation the *Harris* Court found legal justification for an immediate search, based on probable cause, in the notion that to continue to detain Harris and to deprive him of the use of his car while an officer found and obtained from a magistrate a search warrant "would have clearly been an intrusion upon appellant's constitutional rights."

Happily, we are not required to choose between *Stoddard* and *Harris* or resolve the

anomaly they together create.[2] Since they were decided in 1972 the focus of inquiry as to reasonableness of a warrantless seizure or search of a motor vehicle has moved somewhat away from the custodial status of its owner or operator and more to the mobility potential of the vehicle itself. Thus, learning from *Cardwell v. Lewis,* 417 U.S. 583, 594–595, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1973) and *Cady v. Dombrowski,* 413 U.S. 433, 446–447, 93 S.Ct. 2523, 2530–2531, 37 L.Ed.2d 706 (1973), we have recently subdivided the "automobile exception" to the warrant requirement[3] into "moving" and "movable" vehicles because of "the readily apparent difference in exigencies involved," *Hudson v. State,* 588 S.W.2d 348, 354 (Tex.Cr.App.1979).[4] The classification in a given case is conditioned, in turn, partially at least on the character of the location of the motor vehicle, for as the Supreme Court has pointed out in distinguishing *Coolidge v. New Hampshire,* supra, from *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970):

"... The present case differs from *Coolidge* both in the scope of the search and in the circumstances of the seizure. Since the Coolidge car was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property. Here, as in *Chambers v. Maroney* ... the automobile was seized from a public place where access was not meaningfully restricted. This is, in fact, the ground upon which the *Coolidge* plurality opinion distinguished *Chambers* ...," *Cardwell v. Lewis,* supra, 417 U.S. at 594, 94 S.Ct. at 2471.

And, further coupling *Chambers* and *Cardwell v. Lewis,* the Supreme Court went on to observe as to moveability of the Lewis car:

"In fact, because the interrogation session ended with awareness that Lewis had been arrested and that his car constituted incriminating evidence, the incentive and potential for the car's removal substantially increased."

We turn then to examine the circumstances surrounding the on–the–scene seizure and search of appellant's automobile, as well as his custodial status at the time. For reasons about to be stated, we must conclude that the State did not discharge its burden of proving that the automobile exception fits this case.

When Koop and the officers accompanying him arrived at the May Street garage[5] they found it, the driveway to it and what turned out to be appellant's car, along with others, on premises that were fenced.[6] As he engaged Martinez in conversation, Koop observed "several people" inside the garage; although it was about 9:45 p. m., to Koop the garage appeared to be open to the public.[7] After appellant was pointed out to

2. If "[i]t is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior," *Camara v. Municipal Court,* 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), a more troubling paradox is that whether a locked automobile parked in a public place may be seized and searched on probable cause is made to depend on the nature of custodial status of its owner or operator–the stricter the confinement, the higher is the protection against a warrantless seizure and search of his motor vehicle.

3. The exception was first enunciated in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and has since been frequently explicated, as in, e. g., *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). .

4. While *Hudson* and other authorities it discusses on this point dealt with physical seizure and removal of a motor vehicle to search it at another location, the same constitutional considerations apply to a search of a vehicle at the scene of its seizure. *Chambers v. Maroney,* 399 U.S. at 52, 90 S.Ct. at 1981.

5. While referred to generically as a garage, Martinez, who was employed there, said it was a paint and body shop.

6. The gates were open, permitting easy ingress and egress; however, Koop parked his unit in the street.

7. Martinez, however, testified that it was not and that there were signs about indicating the place was closed. However, he also agreed that "the big front door of the shop" was open and lights were on; the eight or so people there were "just personal friends" drinking beer after

him by Martinez, Koop went into the garage,[8] accosted appellant, confirmed his identity and obtained keys to his automobile—all in the presence or view of his friends.

At this point, like the plurality in *Cardwell v. Lewis*, we might well find that the garage premises amounted to "a public place" and the encounter with appellant enough of an indication that his car contained marihuana that "the incentive and potential for the car's removal substantially increased." However, certain testimony of Officer Koop under guidance of the prosecuting attorney illuminates his own estimation of the situation:[9]

"Q: [By Mr. Hinton]: The object of your being there was to search that Chevrolet, is that correct?

A: Yes, sir.

\*   \*   \*   \*   \*   \*

Q: [By Mr. Hinton]: If the car keys that David Montez had hadn't fit the Chevrolet or if he hadn't had any car keys would you have still got in the trunk?

A: Yes, sir.

Q: How would you have gotten in the trunk?

A: Whatever means would have been necessary.

Q: Had anything taken place that allowed you to arrest this Defendant or anybody else at that time that you were aware of before you found the marijuana [sic] in the trunk of the car?

A: There was no reason to arrest anybody at that time.[10]

Q: You couldn't go down and get a search warrant and come back and expect that car to still have the

---

work. The owner of the shop, Ignacio Rojas, confirmed the festive nature of the occasion and added that "everybody drives up when we're drinking beer."

**8.** As he entered Koop recalled that one of the several officers who apparently had gone directly into the garage told the group that they were police officers, asked who was in charge, cautioned everybody to "be cool for a few minutes" and explained that "we were looking for marijuana [sic]." From other testimony we get the impression that the occupants were spread eagle against a wall of the garage.

**9.** In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), writing for the Court, Mr. Justice Powell pointed out that while general principles applicable to claims of Fourth Amendment violations are well settled,

"... Courts and law enforcement officers often find it difficult to discern the proper application of these principles to individual cases, because the circumstances giving rise to suppression requests can vary almost infinitely. Moreover, an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights."

The same problems, of course, arise under our constitutional counterpart to the Fourth Amendment, Article I, Section 9, Constitution of Texas.

**10.** Koop later testified that when he approached appellant in the garage, "I had no reason to place him under arrest. I felt like I

had a reasonable cause to detain him at that time until I could check out the circumstances."

We are constrained to remark on the incredible statements made by a ten year veteran of the Dallas Police Department. Officer Koop had in his possession at that very moment a search warrant for the residence of appellant, based on his own affidavit that named and charged appellant with the felony offense of possession of marihuana, which unconditionally provided, "And, you are commanded to arrest and bring before me each person described and accused in said Affidavit." That command is specifically authorized by Article 18.03, V.A. C.C.P., and "[i]n this regard an arrest warrant incorporated within a search warrant is no different than an arrest warrant issued separate and independent of a search warrant" so that "the authority to arrest under an arrest warrant incorporated in a search warrant is *not* limited to the premises described in the search warrant," *Pecina v. State*, 516 S.W.2d 401, 403 (Tex.Cr.App.1974). Indeed, without the warranted authority to arrest appellant, propriety of the intrusion by and continued presence of Koop and his fellow officers on the premises is most questionable. Compare *Simpson v. State*, 486 S.W.2d 807, 809 (Tex.Cr.App.1972) with *Evans v. State*, 530 S.W.2d 932, 938 (Tex.Cr. App.1975). However, we do not decide the point since appellant has not challenged the invasion on the place but only the search of his automobile.

marijuana [sic] in the trunk, if it did, is that correct?

A: That's right." [11]

Thus, the articulated concern of Koop was that whatever marihuana there was, if any, might somehow be removed from the trunk of the automobile rather than that the car itself would be moved from the premises. With the keys to the car in his own hand, Koop could have hardly regarded the latter event very likely. With a half a dozen other officers present and keeping everybody "cool," we fail to perceive a likelihood of the first. But be that as it may, the point is that the automobile that Koop was determined to search was then and there neither moving nor moveable.

Some thirty–five minutes earlier Koop had obtained a search warrant from a magistrate sitting in his courtroom in the city hall. Asked to locate the May Street garage other than by its address, Koop testified:

"A: It's close–on the other side of a viaduct, referred to as West Dallas. In that particular part it's sometimes referred to as Oak Cliff–close in Oak Cliff."

Keeping in mind that after leaving city hall Koop was diverted from his original mission by a telephone conversation with his informant and thereafter spent some time in collecting a number of other officers to accompany him to the garage in Oak Cliff, the drive from it back to city hall must be exceedingly short, especially at ten o'clock at night.

We must conclude that exigent circumstances have not been shown to exist. The automobile exception of *Carroll*, supra, is not applicable because appellant's automobile was not moving. The "moveable" subclassification of the exception was thwarted by the car keys being in Koop's hand. Whatever "incentive and potential for the car's removal"–factors that influenced the plurality in *Cardwell v. Lewis*, supra–were chilled by the physical detention of appellant and his friends in the garage, all of whom, we glean from the testimony, were contemporaneously arrested; [12] his home, some three miles away, was about to be raided and his wife arrested. [13] Thus, even though the automobile was not in a location as private as the driveway at appellant's home, as in *Coolidge v. New Hampshire*, every person who was or might become aware of what was taking place at the garage was precluded from sounding an alarm or was rendered powerless to do anything about it. [14] Under these circumstanc-

11. Earlier during cross examination Koop had conceded that he could have posted one or more of the other officers with appellant's automobile and the persons in the garage while he or yet another officer went to obtain a search warrant, but explained that he did not because:

"A: Well, my concern was for these people were not under arrest at that time. Secondly, there was a felony being committed there on the premises. Thirdly, that I had a search warrant that I wanted to execute at the other location.
Q: So you just didn't have time to bother with getting another search warrant to search a car that was forty feet away from the building.
A: Yes, sir. That's correct."

12. After his search of the trunk produced kilos of marihuana, Koop placed appellant under arrest and turned him over to other officers who transported him to the Dallas Police Department. Likewise "the other people in that place were put under arrest" and "there was a fairly complete search made of the building and everything in plain view" that resulted in seizure of some fifteen hundred dollars in currency from the beer case. Appellant's automobile was impounded.

13. From five o'clock that afternoon the residence had been under continuous surveillance by plainclothes officers. If need be, then, they were available to follow and restrain Mrs. Montez should she make any move toward the garage premises.

14. As Mr. Justice Stewart wrote, dissenting in *Cardwell v. Lewis*, supra, 417 U.S. at 599, 94 S.Ct. at 2473:

"... Where there is no reasonable likelihood that the automobile would or could be moved, the *Carroll* doctrine is simply inapplicable. * * *

The facts of this case make clear beyond peradventure that the 'automobile exception' is not available to uphold the warrantless seizure of the respondent's car. Well before the time that the automobile was seized, the respondent and the keys to his car were se-

es, there was no exigency. *Hudson v. State*, supra; *Coolidge v. New Hampshire*, supra.

Accordingly, the judgment is reversed and the cause remanded.

TOM G. DAVIS, dissents.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission, a majority of a panel reversed this conviction for the possession of more than four ounces of marihuana because the evidence was introduced as a result of a search of an automobile where approximately sixty pounds of marihuana was found. In addition to the amount of marihuana found in the car, some two hundred pounds was found at his home pursuant to a search warrant which contained an order for the arrest of appellant. We grant the State's motion for rehearing.

There appears to be no question about the search of appellant's home.

At the hearing on the motion to suppress the evidence obtained in the automobile, Officer Kenton Koop of the Dallas Police Department testified that he received information from a confidential informant that appellant was in possession of marihuana. The informant had given him information before this date that had proved to be correct. Officer Koop obtained a search warrant to search the residence of appellant. While enroute to the residence, he received additional information from the same informant that appellant was at a garage at 2406 May Street in Oak Cliff and that he and others there were dividing approximately one hundred pounds of marihuana. He related that he did not get a search warrant for the garage because he did not have time to do so at that time of night and

that the informant told him that they would be there at the address for a short time. When Koop arrived at the garage, someone was listening to a radio in appellant's 1974 black Chevrolet, which had been described earlier by the informant. The occupant pointed out appellant, who was in the garage with other people. Officer Koop testified that the garage was open to the public. This was contradicted to some extent by witnesses called by appellant. Koop went into the garage, asked appellant for the keys and opened the trunk, where he found twenty–four bricks or kilos of marihuana which weighed about 2.2 pounds each.

Koop then proceeded to appellant's home to make the search under the warrant. Appellant's wife was there. Officers found about a pound of marihuana in the attic and about two hundred pounds in a Dodge pickup truck in the garage.

Did the officers have a right to make the search of the automobile? The officers did not have a search warrant for the garage but did have a search warrant for the residence. The search warrant contained an order to arrest appellant.

The reliability of the informant is not questioned. The facts alleged in the affidavit show that the informant was a credible, reliable person. The informant gave him the license number of the automobile, its make and description and related that the people were dividing the marihuana at the garage. The officers had sufficient probable cause to believe that the appellant possessed marihuana in the automobile.

Recently, the Supreme Court of the United States in *Colorado v. Bannister*, —— U.S. ——, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), held and noted that officers who had probable cause could search an automobile where it was stopped on the scene or after the car was seized and moved to a police station, citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

curely within police custody. There was thus absolutely no likelihood that the respondent could have either moved the car or meddled with it during the time necessary to obtain a

search warrant. And there was no realistic possibility that any one else was in a position to do so either."

In the *Bannister* case, the Colorado Springs Police Department observed a blue 1967 Pontiac GTO automobile moving along a road at a speed above the legal speed limit. The automobile disappeared. Shortly thereafter, the officer heard a police radio dispatch reporting theft of motor vehicle parts which had occurred in the area and which announced that a number of chrome lug nuts were among the items missing and provided a description of the two suspects. A few minutes after hearing the report, the officer spotted the same car that he had seen earlier and it was speeding. After the car entered a service station, the officer followed it there for the purpose of issuing a traffic citation to the driver.

As the officer approached the car, both of the occupants, including the respondent Bannister, stepped out. A conversation between the officer and the respondent ensued. Standing just outside the closed front door of the automobile, the officer observed chrome lug nuts in an open glove compartment inside between the front bucket seats as well as two lug wrenches on the floorboard of the back seat. Recognizing that the respondent and his companion met the description of those suspected of stealing the motor vehicle parts, the officer immediately arrested them. He then seized the lug nuts and wrenches. The trial court granted the motion to suppress and the Supreme Court of Colorado affirmed the decision. The state filed for petition for certiorari to the Supreme Court of the United States. The Court noted that searches outside the judicial process under the Fourth Amendment were not authorized unless there were exceptions. The Court wrote:

> "... One of these exceptions, recognized at least since *Carroll v. United States*, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed.2d 543] (1925), exists when an automobile or other vehicle is stopped and the police have probable cause to believe it contains evidence of a crime." [Citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).]

The car was stopped for speeding and there was probable cause "that the contents of the automobile offend[ed] against the law."

The probable cause was noted by the Supreme Court of Colorado but, according to the United States Supreme Court, it mistakenly concluded that a warrant was required to open a car door and seize the items within and his stopping of the car and issuing a traffic citation was legitimate, and that the circumstances of this case provided not only probable cause to arrest but, under *Carroll* and *Chambers*, the probable cause to seize the incriminating items without a warrant.

The state's petition for certiorari was granted. The Supreme Court of the United States held the search was constitutionally permissible. The judgment of the Supreme Court of Colorado suppressing the evidence was set aside.

The Court noted *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979), and, at least impliedly, held that it did not apply.

There were as many exigent circumstances in the present case as there were in *Bannister's* case. The search was authorized. The judgment of reversal is set aside; the State's motion for rehearing is granted.

The other grounds have been considered and overruled.

The judgment is affirmed.

ROBERTS, ODOM, PHILLIPS and CLINTON, JJ., dissent.