**Jose M. VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–81–182–CR
(2185 CR).**

Court of Appeals of Texas,
Corpus Christi.

March 18, 1982.

Juan Perales, Jr., Robstown, for appellant.

Michael J. Westergren, County Atty., Corpus Christi, for appellee.

Before NYE, C. J., and YOUNG and GONZALEZ, JJ.

OPINION

GONZALEZ, Justice.

This is an appeal from a conviction for unlawfully carrying a handgun. Trial was before the court which set punishment at Two Hundred Dollars ($200.00). The question on appeal is the propriety of the officer's conduct in taking a cursory look inside the car without opening the door after the vehicle had been properly stopped for a traffic violation. We affirm.

On the night of November 22, 1981, appellant, while driving his car, was stopped for running a stop sign by a highway patrol unit occupied by two officers. The stop sign was located at the intersection of Texas Highway 77 and Texas Highway 44 in Nueces County. Upon being stopped, appellant immediately got out of his car and met one of the officers at a point away from his car. While that officer wrote appellant a ticket, the other officer, Officer Mead, went to appellant's car. Without entering the car, and with the aid of a flashlight, he looked into the car and observed marihuana seeds on the front seat. A warrantless search of the passenger compartment of the car followed in which the gun in question and a small quantity of marihuana were found under the seat.

Before trial, appellant filed a motion to suppress the gun, alleging that "all matters seized by law enforcement officers were obtained illegally, in violation of the defendant's constitutional rights under the IV ... and XIV Amendments of the United States Constitution ... and Article 38.22 C.C.P." The motion was carried with the case. At the conclusion of the trial, the judge ruled that "The motion to suppress the evidence seized is denied." Implied in that ruling is a finding that (1) the act of Officer Mead in going to and looking into appellant's car was a reasonable intrusion of appellant's car and (2) that when Officer Mead saw the seeds it was immediately apparent to him that the seeds were contraband, namely, marihuana.

In two grounds of error, appellant argues that the trial court committed error in ad-mitting over timely objection fruits of an illegal search and seizure, namely the handgun, because the officer's view of the substance he claimed was marihuana (that view being the probable cause for the search in which the gun was discovered) was made possible by an unlawful intrusion into appellant's car and because it was not readily apparent to the officer that what he saw in plain view was marihuana.

Under the circumstances of this case, the conduct of Officer Mead was an intrusion. The question we must determine is whether that intrusion was reasonable under Fourth Amendment standards.

▪ Whether the intrusion was reasonable necessarily turns on the facts of each case. Reasonableness depends "on a balance between public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The competing interest involved here are the public interest in law enforcement and in not requiring police officers to take unnecessary risks in the performance of their duties, *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), and the citizen's interest in his right to privacy. *Katz v. U. S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A car is clearly an area in which a citizen has an expectation of privacy. *Hudson v. State*, 588 S.W.2d 348, 352 (Tex.Crim.App.1979). The nature of that expectation is succinctly described in the following excerpt from *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976):

"This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell v. Lewis*, 417 U.S. 583, 589, 94 S.Ct. 2464,

2468, 41 L.Ed.2d 325 (1974); *Cady v. Dombrowski,* supra, 413 U.S., at 439–440, 93 S.Ct. at 2527; *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970) . . . .

The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel. Only two Terms ago, the Court noted:

"One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis,* supra, 417 U.S., at 590, 94 S.Ct. at 2469."

The risk of peace officers being the object of a deadly assault during traffic stops has been recently recognized by the *United States Supreme Court in Pennsylvania v. Minns,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) from which we quote:

"We think it too plain for argument that the State's proffered justification— the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' *Terry v. Ohio,* supra, 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile, Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963).' *Adams v. Williams,* 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924 [n. 3], 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.' Id., at 234, n. 5, 94 S.Ct. at 476 [n. 5]."

■ Given the nature of one's expectation of privacy in his car, the conduct of Officer Mead as shown in this record was a minute invasion of appellant's privacy which should yield to the officer's legitimate law enforcement function of enforcing the traffic laws and of minimizing the risk of an unexpected deadly assault from a motorist he has confronted on the road.

Officer Mead gave the following reasons as justification for approaching and looking into the car: (1) to determine if other persons were in the car, (2) to check for apparent violations involving the inspection sticker, the license plates, or vehicle equipment, and (3) to check for weapons. The first two of these reasons have been upheld as reasonable in *Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App.1977). In that case the defendant contended that a peace officer was not justified in approaching his stopped car while he, the defendant, was being detained by police away from his car. To this contention the Court responded.

"Nor are we willing to agree that since Duff, as driver of the car, was in the patrol car with Schmidt, there was no justification for Schmidt's approach of the car to question Pendley. Not only was he justified in approaching the car if he desired to check the license plate number or vehicle inspection sticker, but we have previously held that there is no prohibition against his questioning the passenger of the car."

As to the third reason stated of Officer Mead, we hold that it is reasonable for an officer who has stopped a car for a traffic violation at night on the open highway to approach the car and without entering it or opening the doors to make a cursory look into the passenger compartment with a flashlight for the purpose of spotting weapons that might be lying in the open. Appellant's first ground of error is overruled.

In appellant's second ground of error, he contends that Officer Mead was not immediately aware that the substance was contraband. The record indicates otherwise. Officer Mead testified that he knew the difference between various types of seeds and that from his training and experience as a police officer he could identify and determine immediately that the seeds in the appellant's car were marihuana. Moreover, this Court is not in a position to review the factual determinations made by the trial court. The trial court, in deciding whether to suppress evidence, is the sole judge of the witnesses' credibility and can choose to believe or disbelieve the testimony of any witness. *Walker v. State*, 588 S.W.2d 920 (Tex.Crim.App.1979). We cannot substitute our factual determinations for those of the trial court. Having found that there was sufficient evidence for the trial court's conclusion that Officer Mead was immediately aware of the presence of contraband, we overrule appellant's second ground of error.

The judgment of the trial court is affirmed.